Allen Lichtenstein (Nevada State Bar No. 3992)
Allen Lichtenstein, Attorney at Law, Ltd.
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Telephone:      (702) 433-2666
Facsimile:      (702) 433-9591
E-Mail:      allaw@lvcoxmail.com

Attorney for Plaintiffs
CLORISSA D. PORTER and
WILLIAM D. SPENCER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

| | |
|---|---|
| CLORISSA D. PORTER; WILLIAM D. SPENCER, on behalf of themselves and all those similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, a mental health treatment operation licensed by the State of Nevada, also known as RAWSON-NEAL PSYCHIATRIC HOSPITAL; CHELSEA SZKLANY, in her official and individual capacities as hospital administrator of SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES; MIKE WILLDEN, in his official capacity as director of NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, a department of the State of Nevada; RICHARD WHITLEY, in his official capacity as administrator of NEVADA DIVISION OF PUBLIC AND BEHAVIORAL HEALTH, previously organized as the NEVADA DIVISION OF HEALTH and the NEVADA DIVISION OF MENTAL HEALTH & DEVELOPMENTAL SERVICES; LEON RAVIN, M.D., in his individual and official capacities as associate medical director of RAWSON-NEAL PSYCHIATRIC HOSPITAL; KYLE DEVINE, in his official capacity as bureau chief of NEVADA BUREAU OF HEALTH CARE QUALITY AND | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS, DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLIANCE, the licensing authority; LINDA J. WHITE, M.D., in her individual and official capacities as statewide psychiatric medical director of the State of Nevada; RAO PUVVADA, M.D., a psychiatrist at RAWSON-NEAL PSYCHIATRIC HOSPITAL, in his individual capacity; JACOB MANJOORAN, M.D., a psychiatrist at RAWSON-NEAL PSYCHIATRIC HOSPITAL, in his individual capacity; and DOES 1 to 50,

　　　　　Defendants.

## INTRODUCTION

1.      This is an action for preliminary and permanent injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the ongoing violation by Defendants of the rights secured to patients in the RAWSON-NEAL PSYCHIATRIC HOSPITAL by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1213, *et seq.*; 28 U.S.C. § 1658; the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq.*; and applicable Nevada state laws, as set forth below.

2.      Plaintiffs CLORISSA D. PORTER, WILLIAM D. SPENCER, and the class of similarly situated persons they seek to represent, are former psychiatric patients at RAWSON-NEAL PSYCHIATRIC HOSPITAL ("RAWSON-NEAL") who, while still in need of psychiatric care, were involuntarily discharged from the facility by Defendants and their agents and employees, and sent to out-of-state destinations where Defendants knew said patients would be unable to obtain proper treatment, care and housing. Plaintiffs, and the class they seek to represent, were medicated before their discharge and required to leave the facility under the influence of powerful anti-psychotic/tranquilizing medication. While Plaintiffs, and the class they seek to represent, were in a drugged state, and incompetent to give informed consent, pursuant to standard procedure, institution staff physically escorted them from the facility to waiting taxis bound for the Greyhound Bus Station in Las Vegas, Nevada. They were then directed and required to travel on pre-paid tickets which had been previously ordered and paid for by SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES ("SNAMHS").

3.      Defendant SNAHMS is a mental health treatment operation licensed by the State of Nevada, which is also known as RAWSON-NEAL PSYCHIATRIC HOSPITAL, admitted Plaintiff

PORTER on January 7, 2013, and involuntarily discharged her by Greyhound bus to Flint, Michigan, on January 9, 2013, and admitted Plaintiff SPENCER on August 26, 2012, and on September 20, 2012, involuntarily discharged him by Greyhound bus to Los Angeles, California.

4.       Defendant CHELSEA SZKLANY, the hospital administrator of SNAHMS, Defendant LEON RAVIN, M.D., associate medical director of RAWSON-NEAL, Defendant DOES 5 through 15, and agents and employees under said Defendants' control and supervision, sent Plaintiffs, and the class they seek to represent, involuntarily, to out-of-state destinations at which no prior arrangements had been made for their follow-up care. They were transported out of the State of Nevada and then "dumped" into cities and states with which they had little or no prior contacts and where no one was present to receive or to care for them. They travelled without persons assigned to accompany them to their destinations, without any money, without provisions for medical care, without any emergency phone numbers, without any written instructions or assistance of any kind, and without notice to any other medical facilities, law enforcement personnel, or other public agencies regarding their needs for continued case and the possible dangers they presented to themselves and to the public at large by reason of their severe mental illnesses. Defendants and each of them supplied only a minimum amount of liquid nutrient and a supply of psychiatric medication supposedly sufficient for the days of travel, until the discharged patients' arrival at the destinations chosen by said Defendants.

5.       Representative Plaintiff, CLORISSA D. PORTER ("PORTER"), was discharged from RAWSON-NEAL, operated by Defendant SNAMHS, on January 9, 2013. She had been admitted on January 7, 2013, "depressed" and was experiencing suicidal ideation and had a diagnosed history of bi-polar disorder and schizophrenia. Defendants knew she was penniless and homeless and Defendants and each of them as well as their agents and employees operating under their control and direction knew or acted in reckless disregard of the fact that she would be unable to care for herself during the journey or upon her arrival. Before she was discharged Plaintiff PORTER was Abilify and another psychotropic medication which affect thinking and judgment. While Defendants and each of them and their agents and employees had purportedly developed a written treatment plan which included making arrangements for her to be taken into a program in Caro, Michigan, this treatment plan was intentionally disregarded and violated by her involuntary discharge without any arrangements having been made for PORTER to get to

3

1  Caro from Flint Michigan to which she was sent, nor to enter into any program, contrary to the plan.

2          6.          On January 9, 2013, Defendant psychiatrist DR. RAO PUVVADA (hereinafter

3  "PUVVADA") ordered PORTER discharged, physically escorted from the facility, and placed in a taxi

4  which had been ordered by Defendants. Plaintiff PORTER was then transported to the Greyhound Bus

5  Station where a pre-paid ticket had been purchased by the Defendants to take PORTER to Flint,

6  Michigan, a city at least two hours from Cora, Michigan, at which Defendants had supposedly made

7  arrangements for her to get continued treatment.  Knowing no one in Flint, with no money and no way to

8  travel to Cora, she contacted Defendant RAWSON-NEAL where staff told her to contact the facility in

9  Caro.  PORTER contacted her cousin in Las Vegas, Nevada, who wired her funds for food.  PORTER

10  experienced a mental breakdown and was admitted to a hospital in Michigan which attempted,

11  unsuccessfully, to obtain PORTER'S records from RAWSON-NEAL There was no follow-up plan and

12  no prior contact had been made with any institutions in Michigan from which PORTER could obtain

13  medical and psychiatric care, and no arrangements were made with any facility at which PORTER could

14  obtain shelter or assistance of any kind. She was only given four days of powerful anti-psychotic

15  medications, but no food.  Other Greyhound passengers generously shared food with her because she had

16  nothing to eat during the two-day bus ride from Nevada to Michigan.

17          7.          Representative Plaintiff WILLIAM D. SPENCER was admitted to RAWSON-NEAL on

18  August 26, 2012, severely depressed.  After a few weeks at RAWSON-NEAL, Defendant

19  MANJOORAN noted that SPENCER had previously lived in Glendale, California and told him that he

20  had a one-way ticket on a Greyhound bus to Los Angeles, California, for him.  Dr. MANJOORAN told

21  him that after Greyhound dropped him off in Los Angeles, he should "call 9-1-1" for help.  SPENCER

22  told MANJOORAN that that arrangement was unacceptable as he had no intention of returning to

23  California and that he wanted to stay in Las Vegas, Nevada where he'd been living for the past two years.

24  He refused to accept Dr. MANJOORAN'S suggested discharge plan.

25          8.          On September 20, 2012, Dr. MANJOORAN told SPENCER that he was being discharged

26  that night and that he would be discharged to a "residential aftercare facility" in Pasadena, California

27  where he would receive further treatment and have a support structure which would allow him to return

28  to work.  He was told that housing arrangements had been made at the aftercare facility in Pasadena.

9.     That evening, between 10:00 P.M. and 12 A.M., Spencer was given a receipt for a Greyhound bus ticket and three days' worth of depression medication.  He was then escorted by hospital staff to a taxi waiting outside of RAWSON-NEAL which took him to the Greyhound bus station where he boarded the bus without food or money for an eight hour bus ride to Los Angeles, with no way to get to Pasadena.  It would have no made no difference, however, since contrary to explicit representations, no prior arrangements had been made for SPENCER and he promptly became homeless, experienced panic attacks and anxiety.

10.     After learning of the "dumping" of a putative class member, JAMES FLAVY COY BROWN, in Sacramento by Defendants, the Sacramento Bee newspaper began to investigate the circumstances which led to BROWN's arrival in Sacramento and discovered that since the year 2008 approximately 1,500 patients of the RAWSON-NEAL PSYCHIATRIC HOSPITAL in Las Vegas, Nevada, have been transported by Greyhound Bus to almost every state in the country, all with minimum provisions to sustain them during protracted bus rides.

11.     A random survey conducted by the NEVADA BUREAU OF HEALTH CARE QUALITY AND COMPLIANCE (hereinafter "NBHCQC") of thirty (30) discharges of psychiatric patients from Rawson-Neal revealed discharges in violation of policy and procedures of the Centers for Medicare and Medicaid and the facility's own policies occur frequently. Patients, such as PORTER, SPENCER and BROWN, were involuntarily placed on Greyhound buses and sent out of state without prior arrangements having been made for follow-up care. These patients were not informed where they should go to receive continuing care upon arrival at their destinations. Discharge orders did not specify the amount of nutritional supplements to be provided to the patients for their extended bus trips; and appropriate and necessary prescription medications were not provided. Furthermore, necessary information was not provided on discharge documentation.

12.     A May 4, 2013, investigation by the Centers for Medicare and Medicaid Services (hereinafter "CMS"), a component of the U.S. Department of Health and Human Service (hereinafter "DHHS"), also looked at the same thirty (30) patient charts. Its report corroborates the findings of the NBHCQC and, in addition, faults the hospital's governing body for: 1) failing to ensure that the medical staff was accountable to the governing body for the quality of care provided to patients; 2) failing to

5

ensure there was an effective discharge planning process that applied to all patients; 3) failing to identify at an early stage of hospitalization patients who were likely to suffer adverse consequences upon discharge without an adequate discharge plan; 4) failing to ensure patients were provided with a discharge planning evaluation and needs assessment on a consistent basis in accordance with facility policies and procedures; 5) failing to ensure a discharge planning evaluation was included in patients' medical records according to facility policies and procedures; and 6) failing to ensure arrangements were made by hospital staff for the initial implementation of patients' discharge plans. Cumulatively, these systemic practices resulted in the failure of the facility to deliver statutory mandated care to patients.

13.     After reviewing forty-seven (47) RAWSON-NEAL patient records, CMS reported wholesale violations of its Standards for Discharge Planning (42 C.F.R. § 489.24(e)), including absence of documentation regarding locations to which patients were being sent when discharged out-of-state; absence of documentation that the patients were told how to access shelter or services; absence of documentation regarding available services and how the patients could access those services; and lack of documentation that any attempts were made to contact family or other support persons prior to discharge of the psychiatric patients. These findings appeared in CMS' Summary Statement of Deficiencies, based upon a survey completed on May 9, 2013.

14.     Prior patients of RAWSON-NEAL have come forward and described being bussed to various cities throughout the United States on the representation from Defendants and their agents and employees that arrangements had been made for their housing and continued care but that, upon arriving at the pre-determined destinations, these patients discovered that no arrangements for continued care, treatment, housing and/or shelter had been made and that representations to the contrary were false.

15.     Many prior patients discharged and subjected to "Greyhound therapy" — the name given to the treatment described above — immediately became homeless, and several committed suicide. This group of patients discharged from RAWSON-NEAL and bussed out of state suffered damages both physical and psychological from which they may never recover.  Unless the practices described herein are enjoined, grave damages will continue to be inflicted upon this most vulnerable portion of our population.

**JURISDICTION & VENUE**

16.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that it arises under the Constitution of the United States); 28 U.S.C. § 1343(a)(3) (in that it is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution); Title II of the ADA, 42 U.S.C. 1213, *et seq.*; 28 U.S.C. 1658; EMTALA, 42 U.S.C. §1395dd, *et seq.*; and under 28 U.S.C. § 1343(a)(4) (in that it seeks to obtain equitable relief under Acts of Congress, specifically, under 42 U.S.C. § 1983, 42 U.S.C. 1213, *et seq.*; 28 U.S.C. 1658; 42 U.S.C.§ 1395dd, *et seq.*; and the Declaratory Judgment Act (28 U.S.C. §§ 2201(a) and 2202)). The Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

17.     The statute of limitations related to the claims of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the putative class members they seek to represent, was tolled by the litigation in the action *Brown v. Southern Nevada Adult Mental Health Services*, United States District Court for the District of Nevada, Case No. 2:13-cv-01039-JCM-PAL, where the same class claims asserted in this Complaint were asserted therein.

18.     Venue is proper in the United State District Court for the District of Nevada under 28 U.S.C. § 1391(b). Defendants are located in the District of Nevada and many of the acts and/or omissions complained of herein occurred or will occur in this District.

19.     Intradistrict venue is proper in the Southern Division of the United State District Court for the District of Nevada under District of Nevada L.R. IA 6-1, because this action arises from acts and/or omissions which occurred in the County of Clark, Nevada.

**PARTIES**

20.     Plaintiff CLARISA D. PORTER is a 33 year old indigent woman diagnosed with Bi-Polar disorder and Schizophrenia who was a resident of Las Vegas, Nevada, when, on January 7, 2013, she was admitted to Defendant RAWSON-NEAL, psychotic, depressed and suicidal. PORTER was prescribed psychoactive medication and, on January 9, 2013, he was involuntarily discharged and, without having given her competent consent, was instructed, required, and escorted to a taxi to be taken to the Greyhound Bus Station to be transported by Greyhound bus to Flint, Michigan, a city with which he had no prior contacts and where he knew no one. Defendants made no arrangements for her to be met

7

1  upon arrival, to be sheltered, or for any follow-up care for his psychiatric and medical problems, and

2  provided no advance warning to local police or other agencies.  Neither was PORTER advised to where

3  she should report to access the services she required and, having contacted RAWSON-NEAL for

4  assistance, was told that she should call a shelter in Caro, Michigan to see if they could provide

5  transportation.  She experienced a mental breakdown, was without medication, and was admitted,

6  homeless and without any support, to a hospital in Michigan.

7        21.    Plaintiff WILLIAM D. SPENCER is a 51 year old man who was employed in Las Vegas,

8  Nevada, when he was diagnosed with severe depression and admitted to RAWSON-NEAL on August

9  26, 2012.  He was medicated and after a couple of weeks at the facility spoke with Defendant Dr.

10 MANJOORAN who noted that he had once lived in Glen dale, California and told SPENCER that he had

11 a one-way Greyhound bus ticket for him to Los Angeles, California.  Defendant MANJOORAN told SPE

12 NCER that after Greyhound dropped him off in Los Angeles, he should "call 9-1-1" for help.  SPENCER

13 told Defendant MANJOORAN that the arrangement was not acceptable to him, that he had no intention

14 of returning to California and wished to stay in Las Vegas, Nevada where he'd been living for the past

15 two years and where he had the best prospect to obtain employment and housing.  He refused Defendant

16 MANJOORAN' proposed discharge plans.

17        22.    On September 20, 2012, Dr. MANJOORAN told SPENCER that he was being discharged

18 that night.  SPENCER again expressed his desire to remain in Las Vegas but, in response, SPENCER

19 was told that he was going to be discharged to a "residential aftercare facility" in Pasadena, California

20 where he would receive further treatment and have a support structure to assist him to return to work.

21 SPENCER was told that housing arrangements had already been made for him in the aftercare facility in

22 Pasadena.  He accepted the discharge plan with the aforementioned assurances.

23        23.    That evening, shortly before midnight, SPENCER was given a receipt for the pre-

24 purchased Greyhound bus ticket and three days' worth of depression medication he'd been prescribed at

25 RAWSON-NEAL.  He was then escorted by hospital staff to a taxi waiting outside of RAWSON-NEAL

26 and taken to the Greyhound bus station.

27        24.    After receiving the itinerary at the bus station, SPENCER realized he was bound for Los

28 Angeles, not Pasadena, and began to experience a panic attack.  He attempted to change his destination

8

but was told that there was no Pasadena Greyhound bus station. SPENCER called RAWSON-NEAL and was told that staff at the aftercare facility would drive to Los Angeles, pick him up and transport him to Pasadena; he was told to call the aftercare facility once he reached Los Angeles.

25.     Early in the morning of September 21, 2012, SPENCER arrived in Riverside, California, without money or food, and having had nothing to eat during the eight hour bus ride. He immediately called the aftercare facility in Pasadena, as he was instructed to do by RAWSON-NEAL and was informed that they had no information about him or his arrival, that they had not been contacted by RAWSON-NEAL, that they never performed "pickups" of residents, and furthermore, they had no space for him at the facility. SPENCER experienced a severe panic attack and contacted the local police who contacted the aftercare facility and received the same information. He became homeless in Riverside until he finally connected with relatives in Hesperia, California who assisted him to recover from the experiences of being misled and "dumped" by RAWSON-NEAL

26.     Defendant MIKE WILLDEN (hereinafter "WILLDEN") is, and at all times material hereto was, the Director of the NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES (hereinafter "NDHHS"), and oversees the provision of mental health services, and by statute, must monitor all state funded mental health services. NDHHS is also directly involved in decisions regarding agency structure, staffing and program development. Pursuant to N.R.S. § 433.314, NDHHS duties include, but are not limited to, establishing policies to ensure adequate development and administration of services. Defendant WILLDEN is sued in his official capacity.

27.     Defendant RICHARD WHITLEY (hereinafter "WHITLEY") is the Administrator of the NEVADA DIVISION OF PUBLIC AND BEHAVIORAL HEALTH (hereinafter "DPBH") whose task it is to administer the provisions of the law relating to his/her division subject to administrative supervision by the director. Establishment of the DPBH was preceded by the NEVADA DIVISION OF HEALTH and the NEVADA DIVISION OF MENTAL HEALTH & DEVELOPMENTAL SERVICES, for which Defendant WHITLEY was, and at all times material hereto, the administrator of both agencies. Defendant WHITLEY is sued in his official capacity.

28.     CHELSEA SZKLANY (hereinafter "SZKLANY") is, and at all times material hereto was, the Administrator of and is responsible for the care and treatment provided to patients by SOUTHERN

9

NEVADA ADULT MENTAL HEALTH SERVICES,  as licensed by the State of Nevada to operates the psychiatric treatment facility known as RAWSON-NEAL PSYCHIATRIC HOSPITAL, to which Plaintiffs PORTER and SPENCER were admitted, respectively on January 7, 2013, and August 26, 2012, and from which they were involuntarily discharged and transported out-of-state by Greyhound bus, respectively  on January 9, 2013, and September 20, 201. Defendant SZKLANY is sued in her individual and official capacities. For ease of reference, this complaint will refer to RAWSON-NEAL when discussing the facility operated by SNAMHS.

29.     Defendant LEON RAVIN, M.D. (hereinafter "RAVIN") is, and at all times material hereto was, Associate Medical Director and responsible for care provided to patients at the RAWSON-NEAL. Defendant RAVIN is sued in his individual and official capacities.

30.     Defendant ROA PUVVADA, M.D., at all times material hereto was, a psychiatrist responsible for the care and treatment of Plaintiff PORTER who, among other things, ordered PORTER discharged to Flint, Michigan, by Greyhound bus without making appropriate arrangements for PORTER'S follow-up care. Defendant PUVVADA is sued in his individual capacity.

31.     Defendant JACOB MANJOORAN, M.D., at all times material hereto was, a psychiatrist responsible for the care and treatment of Plaintiff SPENCER who, among other things, ordered SPENCER discharged to Los Angeles, California, by Greyhound bus without making appropriate arrangements for SPENCER'S follow-up care.  Defendant MANJOORAN is sued in his individual capacity.

32.     Defendant KYLE DEVINE (hereinafter "DEVINE") is, and at all times material hereto was, the Bureau Chief of the NEVADA BUREAU OF HEALTH CARE QUALITY AND COMPLIANCE (hereinafter "BHCQC"), and is responsible for receiving and investigating complaints that relate to health care facilities within the State of Nevada. DEVINE is also responsible for licensing and certifying facilities, such as SNAMHS which operates the RAWSON-NEAL. Pursuant to N.R.S. § 439.150, the State Board of Health is supreme in all non-administrative matters and has general supervision over all matters relating to the preservation of health and lives of Nevada citizens and over the work of State Health Officer and all district, county and city health departments. Additionally, the Department is designated as the agency to cooperate with federal authorities in the administration of

certain parts of the Social Security Act. Pursuant to N.R.S. § 439.160, the Health Division has supervisory power over local health officers, and has authority to investigate cases of violation of the law. Defendant DEVINE is sued in his official capacity.

33.    Defendant LINDA J.WHITE, M.D. (hereinafter "WHITE") is, and at all times material hereto was, the Statewide Psychiatric Medical Director of the State of Nevada and, in that capacity, is responsible for the supervision and direction of the provision of services at RAWSON-NEAL operated by SNAHMS. Defendant WHITE is sued in her individual and official capacities.

34.    Defendant DOES 1 through 4, inclusive, are, and at all times material hereto, were the social workers or other members of a discharge team, and responsible for the planning, oversight and monitoring of discharging patients pursuant to federal and state regulations.

35.    Defendant DOES 5 through 15, inclusive, are, and at all material times hereto, were psychiatrists, mental health professionals, nurses, and other health workers and supervisors who were responsible for making and executing policies which resulted in the discharge and transportation to out of State of Nevada locations of patients for whom no prior follow-up care arrangements had been made, resulting in the damage complained of herein.

36.    Defendant DOES 16 through 50, inclusive, are all persons or entities who were in some way responsible for the care and treatment of Plaintiffs PORTER and SPENCER, and the class of persons they seek to represent, and/or for hiring, training, monitoring, creating and/or implementing policies and procedures relating to, and/or supervising those directly responsible for the care and treatment of PORTER and SPENCER who failed to discharge their duties appropriately causing PORTER and SPENCER, and the class of persons they seek to represent, to suffer damages.

37.    The real names and identities of those persons and entities identified herein as DOES 1 to 50 are not now known and are therefore sued herein by their fictitious names. Plaintiff requests leave of court to substitute their real names and identities when the same are ascertained. DOES 1 to 50 are sued in their individual and official capacities

## GENERAL ALLEGATIONS

38.    At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

11

**Clorissa Porter**

39.    On January 11, 2013, then 30 year-old Plaintiff and class representative PORTER arrived in Flint, Michigan in unstable, untreated, severe psychiatric condition, having traveled by Greyhound bus on a one-way ticket from Las Vegas, Nevada, prepaid by Defendant SNAMHS. PORTER had been involuntarily discharged from the RAWSON-NEAL, operated by SNAMHS, on January 9, 2013, on orders from Defendant PUVVADA who represented to her that arrangements had been made for her to obtain shelter at a facility at Caro, two hours away from Flint.  In fact, no transportation had been arranged for her to get to Caro and no prior arrangements had been made for her to be accommodated at any shelter in Caro.  She experienced a mental breakdown, was hospitalized.  She remained in Michigan with no way to return to Nevada to be with her family. Defendant PUVVADA acted with deliberate indifference to, and with reckless disregard of, Plaintiff PORTER's psychiatric condition in discharging her and in requiring her to leave the State to go to a remote location where she was without resources and had no access to necessary continuing care.

40.    As Defendants, and each of them, knew, PORTER was discharged without money, food or identification, knew no one in Flint and had no way to get to Caro where, it was falsely represented, a care facility was awaiting her arrival.  Importantly, Defendants also knew that PORTER did not wish to go to Michigan and was suffering from bi-polar disorder and schizophrenia. No plan for a continuation of her psychiatric or medical treatment was formulated before PORTER was dispatched to the Greyhound bus station in Las Vegas, Nevada, and no contact was made by Defendants with any provider of medical or psychiatric or any other services in Michigan for follow-up care.

**William D. Spencer**

41.    On September 20, 2012, around midnight, SPENCER was involuntarily discharged from RAWSON-NEAL and transported by taxi to the Greyhound Bus station for transport to Pasadena where it was represented that he would be admitted to a "residential aftercare facility" where he would receive further treatment and have a support structure to get him back to work.  Although SPENCER stated to RAWSON-NEAL staff, including Defendant MANJOORAN, that he wanted to remain in Las Vegas, he was told that housing arrangements had already been made for him at the aftercare facility in Pasadena. The Greyhound bus did not, in fact, go to Pasadena where there was no Greyhound station but rather

12

took him to Riverside, California, from where he contacted the Pasadena aftercare facility and learned that they could not pick him up, that they had no space for him at any rate, and that no arrangements had been made by RAWSON-NEAL for SPENCER to be accommodated at their facility.

42.     SPENCER became homeless in Riverside where he remained on the streets for a week, traumatized and depressed, before contacting family members who provided him some assistance in Hesperia, California.

43.     Defendant MANJOORAN acted with deliberate indifference to, and with reckless disregard of, Plaintiff SPENCER's psychiatric condition in discharging him and in requiring him to leave the State to go to a remote location where he was without resources and had no access to necessary continuing care.

44.     As Defendants, and each of them, knew, SPENCER was discharged without money, food or identification, knew no one in Riverside and had no way to get to Pasadena where, it was falsely represented, a residential care facility was awaiting his arrival.  Defendants also knew that SPENCER was severely depressed, wished to remain in Las Vegas where he had lived and worked the prior two years, and did not wish to go to Pasadena or to any other location in California. No plan for a continuation of his psychiatric or medical treatment was formulated before SPENCER was dispatched to the Greyhound bus station in Las Vegas, Nevada, and no contact was made by Defendants with any provider of medical or psychiatric or any other services in California for follow-up care.

## INJUNCTIVE ALLEGATIONS

45.     The failures of Defendants, and each of them, all acting under color of state law, to deliver the statutorily mandated care to patients in their custody and control resulted in the systematic disregard of their serious psychological and medical conditions and resulted in adverse consequences, which predictably flow from such failures, and caused damages to patients who were the victims of such disregard.

46.     Unless preliminarily and permanently enjoined from violating statutory and federal constitutional provisions, and policies and procedures and standards in place to safeguard the condition of patients under their care and control, Defendants' disregard of those statutory and federal constitutional provisions and policies, procedures and standards will continue and Plaintiff members of

13

the class will likely be damaged as PORTER and SPENCER were damaged when bused out-of-state after being discharged from RAWSON-NEAL.

### CLASS ALLEGATIONS

47.     Plaintiffs PORTER and SPENCER seek to have a class certified under Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure. The Class is defined as follows:

A class of all persons in need of mental health services who were admitted and subsequently discharged from SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES' RAWSON-NEAL PSYCHIATRIC HOSPITAL facility who meet the following criteria:

a.     upon discharge escorted to a pre-paid taxi and transported to the local Greyhound bus terminal and provided a voucher for a one-way ticket to an out-of-state destination; and

b.     without documentation in hospital records of arrangements for the continuation of their treatment; for follow-up care; and for them to be met, upon arrival, and/or directed to facilities at which shelter and/or continuation of care could be obtained.

48.     The class is so numerous that joinder of all members is impractical. Based on an examination of records, Plaintiffs are informed and believe that between 2008 and January 2013, more than1500 patients were discharged from RAWSON-NEAL, placed on Greyhound buses, and shipped out of state on pre-paid bus tickets without required follow-up arrangements for them having been made and documented in hospital records. Plaintiffs are informed and believe that more than several hundred of those patients were inappropriately and illegally discharged in violation of the U.S. Constitution and statutes, Nevada State laws and regulations, and the institution's own stated policies and procedures. There are questions of law and fact common to all members of the class, since all share the same factual and legal nexus.

49.     The claims of the representative Plaintiffs, PORTER and SPENCER, are typical of the claims of the class members. The representative parties will fairly and adequately represent the interests of the class.

50.     Defendants' discharge customs, practices, and policies, sometimes referred to as "Greyhound therapy," have affected all members of the class in the same way, thereby making injunctive and declaratory relief appropriate to the class as a whole.

14

51.     Common questions of fact to be determined with respect to the class include:

a.      Whether Defendants operate a facility which provides emergency treatment to persons who need mental health services;

b.      Whether Defendants discharge patients and arrange transportation for them to Greyhound Buses for out-of-state transport on pre-paid, one-way tickets;

c.      Whether Defendants customarily administer prescription psychotropic medications to the patients being discharged for out-of-state transportation;

d.      Whether Defendants customarily represented to the patients being discharged for out-of-state destinations that arrangements had been made for them to receive, upon arrival at those destinations, shelter, care, and treatment for their continuing medical and psychological needs;

e.      Whether, contrary to representations, no arrangements are customarily made for the discharged patients to be met and /or to receive the care Defendants represented the patients would receive;

f.      Whether patients who are residents of counties in the State of Nevada when admitted to Rawson-Neal Psychiatric Hospital, operated by Defendant SNAMHS, are discharged, not to the counties in the State of Nevada where they previously resided, but rather transported to out-of-state locations;

g.      Whether representations were customarily made to induce patients to sign "consent to discharge" forms;

h.      Whether defendants and their agents knew or should have known that the persons signing "consent to discharge" forms, prior to Greyhound Bus out-of-state transportation  were under the influence of  psychotropic medications or otherwise mentally impaired such that they were incapable of giving knowing, informed consent, and

i.      Whether psychiatric patients of Defendants who were bussed to out-of-state locations without prior arrangements having been made to provide them with appropriate shelter, care and continuing medical and psychiatric treatment were

15

harmed.

52.     The common questions of law to be determined with respect to the class are:

i.      Whether Defendant SZKLANY's, RAVIN's, PUVVADA's, MANJOORAN's and DOES 1 to 50's discharge practices relating to out-of-state transport of psychiatric patients violate the rights of class members under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, Nevada State law, and the institution's policies and procedures;

ii.     Whether Defendants  WILLDEN, WHITLEY, SZKLANY, RAVIN, WHITE, and DOES 1 to 50, by virtue of their positions of authority, were responsible for the acts and violations of the institutions and subordinates under their control and direction; and

iii.    Whether Defendants SZKLANY, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50, in their individual capacities, violated their fiduciary duties and policies, procedures and regulations which were promulgated and designed to protect the vulnerable patients in their care.

53.     These questions of law and fact are common to all members of the class and predominate over any question affecting individual class members.

54.     The class representative knows of no conflict of interest among class members.  Plaintiffs are represented by Allen Lichtenstein, who is an experienced civil rights attorney who can vigorously prosecute this action.

### MUNICIPAL & SUPERVISORY ALLEGATIONS

55.     SNAMHS, and its hospitals it is licensed to operate, including RAWSON-NEAL, is required by Code of Federal Regulations, 42 C.F.R. § 482.43, to have in effect a discharge planning process that applies to all patients. Contrary to this requirement, Defendants WILLDEN, WHITLEY, SZKLANY, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50 failed to ensure that a comprehensive discharge plan was implemented for patients discharged from the facility and failed to identify patients who were likely to suffer adverse health consequences upon discharge without an adequate discharge plan. Furthermore, the above-named Defendants denied individuals qualified for

16

protection under Title II of the ADA and EMTALA the benefit of a safe involuntary commitment and

discharge, in violation of their obligations as public entities.

56.     Defendants SZKLANY, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50 failed

to provide an appropriate safe discharge plan for patients according to physicians' orders and failed to

ensure a discharge planning evaluation was completed on patients that included the likelihood that

patients would need post-hospital services and identify where such services would be received. As a

result, patients were discharged with deliberate indifference to, and reckless disregard of, their serious

medical and psychiatric needs for which no discharge plan was developed or followed. To the contrary,

patients, including Plaintiffs PORTER and SPENCER, and members of the class which they seek to

represent, were administered powerful psychotropic medications and, while unable to intelligently and

knowingly consent, were involuntarily placed into taxis, and conveyed to Greyhound buses into which

they were loaded for out-of-state destinations at which no prior arrangements had been made for

provision of necessary follow-up care, in violation of the policies set out in 42 C.F.R. 482, Title II of the

ADA, EMTALA, and in violation of the Fourth, Eighth and Fourteenth Amendments to the Unites States

Constitution.

57.     Defendants SZKLANY and RAVIN, as supervisors of their positions at SNAMHS and

RAWSON-NEAL, respectively, were aware of the unlawful and inadequate discharge policies and

practices described above. SZKLANY and RAVIN acquiesced and/or were culpably indifferent to

continued application of such unlawful discharge policies and practices.

58.     The above-described actions by Defendants, and each of them, caused and, unless

preliminarily and permanently enjoined, will continue to cause great psychological, physical and

emotional suffering, degradation, pain, and injury, financial loss, and loss of liberty to Plaintiffs

PORTER and SPENCER and the class they seek to represent.

59.     On September 30, 2013, the City Attorney of San Francisco filed a class action lawsuit on

behalf of the City and County of San Francisco against the State of Nevada seeking to bar Nevada from

conducting the patient-dumping discharge practices described herein, and seeking reimbursement for San

Francisco's costs to provide care to the patients who had been dumped by Nevada into San Francisco.

*See* <http://www.sfcityattorney.org/2013/09/12/nevada-patient-dumping-class-action/>. The case was

17

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Porter v. Southern Nevada Adult Mental Health Services*; United States District Court, District of Nevada, Case No. _____

1  subsequently settled by Nevada for a payment of $400,000.00 and implementation of policies that were

2  intended to limit Nevada's ability to dump patients in the future.

3  ### FIRST CLAIM

4  **Unreasonable Seizure**

5  **(Fourth & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

6      60.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

7  the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

8      61.     The First Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

9  WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants

10  CHELSEA SZKLANY, in her official and individual capacities (for equitable relief and damages);

11  MIKE WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official

12  capacity (for equitable relief); KYLE DEVINE, in his official capacity (for equitable relief); LINDA J.

13  WHITE, M.D., in her official and individual capacities (for damages and equitable relief); LEON

14  RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO

15  PUVVADA, M.D., in his individual capacity (for damages); JACOB MANJOORAN, M.D., in his

16  individual capacity (for damages); and DOES 1 to 50, in their official and individual capacities (for

17  damages and equitable relief).

18      62.     Defendants, and each of them, are state actors subject to strictures of the Fourth

19  Amendment. Defendants, through the use of coercion, physical force or show of authority, restrained or

20  restricted Plaintiffs PORTER and SPENCER and the class they seeks to represents' freedom of

21  movement. Defendants administered powerful psychotropic medications to Plaintiffs PORTER and

22  SPENCER and the members of the class they represent, misrepresented services allegedly arranged for

23  them, then involuntarily discharged them, placed them into taxis for transport to Greyhound buses, and

24  required them to board these buses for transport out of State while under the influence of powerful

25  psychiatric medications for severe mental illness that rendered them incapable of informed consent.

26  These compelled transports, under the circumstances, were coercive in nature and implemented without

27  voluntary consent, and constituted unreasonable seizures and violated Plaintiffs' right to due process of

28  law under the Fourteenth Amendment, and to liberty under the Fourth Amendment, of the U.S.

18

Constitution and 42 U.S.C. § 1983.

63.    Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

64.    As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## SECOND CLAIM

### Cruel and Unusual Punishment

### (Eighth & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)

65.    Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

66.    The Second Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants MIKE WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her official and individual capacities (for equitable relief and damages); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO PUVVADA, M.D., in his individual capacity (for damages); JACOB MANJOORAN, M.D., in his individual capacity (for damages); KYLE DEVINE, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her official and individual capacities (for damages and equitable relief); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

67.    Defendants, and each of them, have and for all times material hereto, had a duty to provide for the physical and psychiatric needs of their patients.  Instead of providing such care, however, Defendants, and each of them, demonstrated deliberate indifference to and reckless disregard of those needs by discharging Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, by taxi and Greyhound bus to locations outside of the State of Nevada without documenting in

19

1  the hospital record and providing for the continuation of necessary medical and psychiatric services, thus

2  causing Plaintiffs PORTER and SPENCER, and the class they seek to represent, to suffer physical and

3  psychological harm. Defendants' actions or inactions were sufficiently analogous to criminal

4  punishment, because they effectively banished Plaintiffs PORTER and SPENCER, and the class they

5  seek to represent, to out-of-state locations outside of the State of Nevada. The aforesaid deliberate

6  indifference and banishment to their serious physical and psychiatric condition constitutes cruel and

7  unusual punishment in violation of the Eighth Amendment to the United States Constitution.

8        68.     Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to

9  50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to

10  Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the

11  U.S. Constitution, or was wantonly or oppressively done.

12        69.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they

13  seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

14        WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

15  and for all members of the class which they seek to represent, pray for relief as hereunder appears.

16  **THIRD CLAIM**

17  **Procedural Due Process**

18  **(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

19        70.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

20  the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

21        71.     The Third Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

22  WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants MIKE

23  WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official capacity

24  (for equitable relief); CHELSEA SZKLANY, in her individual and official capacities  (for damages and

25  equitable relief); RAO PUVVADA, M.D., in his official and individual capacities (for damages and

26  equitable relief); JACOB MANJOORAN, M.D., in his individual capacity (for damages); KYLE

27  DEVINE, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her official and

28  individual capacities (for damages and equitable relief); and DOES 1 to 50, in their official and

20

1   individual capacities (for damages and equitable relief).

2          72.    Plaintiffs PORTER and SPENCER, and the class they seek to represent, maintained a

3   procedurally-protected property interests in various statutes and regulations. *See*, *e.g.*, N.R.S. §

4   433A.400; N.R.S. § 433.314; 42 C.F.R. § 482.43; 42 C.F.R. § 489.24(e); and 45 C.F.R. § 205.10.

5   Additionally, they maintained a liberty interest against being involuntarily discharged without voluntary

6   consent or any form of notice, hearing, or means of challenging the involuntary discharge.

7          73.    Plaintiffs PORTER and SPENCER, and the class they seek to represent, were not given

8   notice, a hearing or any appropriate due process as a means to challenge or reverse Defendants'

9   involuntary discharge and compelled out-of-state transport of them, in violation of the procedurally-

10   protected interest outlined above which are protected by the Due Process Clause of the Fourteenth

11   Amendment to the U.S. Constitution. Any government interest in involuntarily discharge is outweighed

12   by the risk of erroneous deprivation and private interests at stake.

13          74.    Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to

14   50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to

15   Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the

16   U.S. Constitution, or was wantonly or oppressively done.

17          75.    As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they

18   seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

19          WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

20   and for all members of the class which they seek to represent, pray for relief as hereunder appears.

21                                          **FOURTH CLAIM**

22                              **State-Created Danger (Substantive Due Process)**

23                     **(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

24          76.    Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

25   the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

26          77.    The Fourth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

27   WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants MIKE

28   WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official capacity

21

(for equitable relief); CHELSEA SZKLANY, in official and individual capacities (for damages and equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO PUVVADA, M.D., in his individual capacity (for damages); KYLE DEVINE, in his official capacity (for equitable relief); JACOB MANJOORAN, M.D., in his individual capacity (for damages); LINDA J. WHITE, M.D., in her official and individual capacities (for damages and equitable relief); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

78.     Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were subject to Defendants' involuntary discharge and compelled out-of-state transport, which affirmatively placed them in a position of danger which they otherwise would not have faced but for the Defendants' actions, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were placed in a position of danger that they were not in prior to entering RAWSON-NEAL for treatment, upon involuntary out-of-state discharge.

79.     Defendants' actions or inactions constitute conscience-shocking behavior which fails to comport with traditional ideas of fair play and decency, resulting in interference of the rights of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, liberty, which includes the right to move around freely, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

80.     Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

81.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

### FIFTH CLAIM

**Special Relationship (Substantive Due Process)**

**(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

82.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

83.     The Fifth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants MIKE WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual and official capacities (for damages and equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO PUVVADA, M.D., in his individual capacity (for damages); JACOB MANJOORAN, M.D., in his individual capacity (for damages); KYLE DEVINE, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her official and individual capacities (for damages and equitable relief); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

84.     Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were subject to Defendants' involuntary discharge and compelled out-of-state transport, after Defendants had obtained custody and formed a special relationship with them through which Defendants assumed some responsibility for their safety and well-being, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

85.     Defendants' actions or inactions constitute conscience-shocking behavior which fails to comport with traditional ideas of fair play and decency, resulting in interference of the rights of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent,  liberty, which includes the right to move around freely, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

86.     Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the

23

U.S. Constitution, or was wantonly or oppressively done.

87.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

<u>**SIXTH CLAIM**</u>

**Wealth Discrimination (Equal Protection)**

**(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

88.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

89.     The Sixth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants MIKE WILLDEN, in his official capacity (for equitable relief); RICHARD WHITLEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual and official capacities (for damages and equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO PUVVADA, M.D., in his individual capacity (for damages); JACOB MANJOORAN, M.D., in his individual capacity (for damages); KYLE DEVINE, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her official and individual capacities (for damages and equitable relief); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

90.     Defendants, upon information and belief, treated indigent patients such as Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, differently, shipping out-of-state via taxi and Greyhound bus those who could not pay for services in RAWSON-NEAL, while retaining or arranging appropriate discharge for patients who were not indigent. Thus Defendants' above-described policies, practices and procedures were intended and designed to and did single out indigent patients and have the purpose and effect of depriving indigent psychiatric patients of their right to equal psychiatric and medical care in SNAHMS' RAWSON-NEAL. These policies and actions are based on Defendants' animus towards this disfavored group and/or their desire to preserve the fiscal integrity of

24

their programs and lack a rational relationship to any legitimate state interest. In adopting and implementing these policies and practices with intent to harm and disadvantage indigent patients in their care and custody, Defendants have violated the equal protection clause and 42 U.S.C. § 1983.

91.     Defendants SZKLANY, WHITE, RAVIN, PUVVADA, MANJOORAN, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourth and Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

92.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## SEVENTH CLAIM

### Disability Discrimination

### (Title II of the Americans with Disabilities Act; 42 U.S.C. § 1213, *et seq.* & 28 U.S.C. § 1658)

93.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

94.     The Seventh Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES; MIKE WILLDEN, in his official capacity (for damages and equitable relief); RICHARD WHITLEY, in his official capacity (for damages and equitable relief); CHELSEA SZKLANY, in her official capacity (for damages and equitable relief); RAVIN, in his official capacity (for damages and equitable relief); KYLE DEVINE, in his official capacity (for damages and equitable relief); LINDA J. WHITE, M.D., in her official capacity (for damages and equitable relief); and DOES 1 to 50, in their official capacities (for damages and equitable relief).

95.     Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, are qualified disabled persons under Title II of the ADA, and were suffering from a mental disability at the time of the incident giving rise to this action.

96.     SNAMHS is a public entity under Title II of the ADA. SNAMHS and its hospital administrator, Defendants SZKLANY, WILLDEN, WHITLEY, RAVIN, PUVVADA, MANJOORAN, DEVINE, and WHITE violated Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable modifications to their policies, practices and procedures to ensure their needs, as individuals with a disability, would be met.

97.     The exercise of the policy to place an involuntary committed patient in an unstable, untreated, severe psychiatric condition in a taxi to be placed in a Greyhound on a one-way ticket to another city with which he had no personal ties and without arrangements having been made for continuation of care, constituted a violation of the right to receive medical care while in custody of the state under Title II of the ADA. Pursuant to 42 C.F.R. § 482.12, 42 C.F.R. § 482.11, 42 C.F.R. § 482.13, 42 C.F.R. § 482.43, and N.A.C. 449.332 Defendants, including Defendant SZKLANY were required to exercise the same level of care to all patients during discharge. Title II of the ADA requires protection of rights. Failure to protect Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, violated their constitutional right to reasonable medical care without conscious indifference by Defendants.

98.     As a direct and proximate result of Defendants' conscious indifference to and reckless disregard of the needs of Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, and Defendants' refusal to provide safe medical care to an involuntarily committed patient during discharge while in their care and custody and their failure to protect him and the class he seeks to represent, Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## EIGHTH CLAIM

### Patient-Dumping

### (Emergency Medical Treatment and Active Labor Act; 42 U.S.C. § 1395dd, et seq.)

99.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

26

1   the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

2       100.    The Eighth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

3   WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants

4   SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES; MIKE WILLDEN, in his official

5   capacity (for equitable relief); RICHARD WHITLEY, in his official capacity (for equitable relief);

6   CHELSEA SZKLANY, in her official and individual capacities (for damages and equitable relief);

7   LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); RAO

8   PUVVADA, M.D., in his individual capacity (for damages); JACOB MANJOORAN, M.D., in his

9   individual capacity (for damages); KYLE DEVINE, in his official capacity (for equitable relief); LINDA

10   J. WHITE, M.D., in her official and individual capacities (for damages and equitable relief); and DOES 1

11   to 50, in their official and individual capacities (for damages and equitable relief).

12       101.    EMTALA imposes special responsibilities on a hospital with an emergency department.

13   Pursuant to EMTALA's medical screening requirement, if an individual seeks emergency care from a

14   hospital with an emergency department and if that hospital participates in the Medicare program, then

15   "the hospital must provide for an appropriate medical screening examination within the capability of the

16   hospital's emergency department . . . to determine whether or not an emergency medical condition . . .

17   exists." 42 U.S.C. § 1395dd(a). Once an individual with an emergency medical condition has been

18   admitted, the hospital must stabilize the patient and, if transferring the patient, comply with 42 C.F.R. §

19   489.24(e).

20       102.    At all material times alleged herein, RAWSON-NEAL had a psychiatric observation unit

21   (POU) which meets the EMTALA definition of a dedicated emergency department.

22       103.    At all material times alleged herein, RAWSON-NEAL was a Medicare participant.

23       104.    Defendants, including medical staff at RAWSON-NEAL failed to provide for an

24   appropriate medical screening examination of Plaintiffs PORTER and SPENCER, and the members of

25   the class they seek to represent, within the capability of the hospital's emergency department in order to

26   determine whether or not they suffered from an emergency medical condition upon his arrival to the

27   RAWSON-NEAL.

28       105.    Pursuant to EMTALA's stabilization before transfer requirement, a hospital is liable if it

27

detected an emergency medical condition for any individual who came to the hospital, but failed "to stabilize" that condition before transferring the individual. 42 U.S.C. § 1395dd(b)-(c). The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A). Transfer includes both discharge and movement to another facility. 42 U.S.C. § 1395dd(e)(4).

106.    Staff at Defendant SNAHMS-operated RAWSON-NEAL detected that Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were suffering from an emergency medical condition, but failed to stabilize them prior to discharging him from the hospital. RAWSON-NEAL staff failed to determine, within reasonable medical probability, that no material deterioration of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, emergency medical condition was likely to result from or occur during their transfer from RAWSON-NEAL.

107.    Defendants "transferred"/involuntarily discharged Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent,, without determining that there was another facility that had agreed to accept them; without determining that space and qualified personnel in a facility were available to provide necessary treatment to them; without providing a receiving facility with all of their medical records; without providing them with information about how and where to get shelter and access to services they required; and without documenting in the medical record that information which was necessary for them to have to obtain necessary continuing care and treatment.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## **PRAYER**

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, seek relief from the Court as follows:

1.    For an order certifying the proposed class under Federal Rule of Civil Procedure 23;

2.    For a temporary restraining order and/or preliminary injunction and permanent injunction enjoining and restraining Defendants from continuing or repeating the unlawful policies, practices and

28

1    conduct complained of herein;

2         3.       For declaratory judgment that Defendants' policies, practices and conduct as alleged

3    herein were/are in violation of Plaintiffs' rights under the United States Constitution, and Nevada law;

4         4.       For damages in an amount according to proof;

5         5.       Punitive damages;

6         6.       For attorneys' fees as provided by law;

7         7.       For costs of suit; and

8         8.       For such other and further relief as the Court may deem just and proper.

9    Dated: December 20, 2016                    Respectfully Submitted,

10

11                                              /s/ Allen Lichtenstein
                                          By: _____
12                                              Allen Lichtenstein
                                                Allen Lichtenstein, Attorney at Law, Ltd.
13                                              3315 Russell Road, No. 222
                                                Las Vegas, Nevada 89120
14                                              Telephone:       (702) 433-2666
                                                Facsimile:       (702) 433-9591
15                                              E-Mail:          allaw@lvcoxmail.com

16                                              Attorney for Plaintiffs
                                                CLORISSA D. PORTER and
17                                              WILLIAM D. SPENCER

18

19

20

21

22

23

24

25

26

27

28

1

### JURY TRIAL DEMAND

2     A JURY TRIAL IS DEMANDED on behalf of Plaintiffs CLORISSA D. PORTER and

3 WILLIAM D. SPENCER.

4 Dated: December 20, 2016                              Respectfully Submitted,

5

6                                                        /s/ Allen Lichtenstein
                                                  By: _____

7                                                      Allen Lichtenstein
                                                      Allen Lichtenstein, Attorney at Law, Ltd.
8                                                      3315 Russell Road, No. 222
                                                      Las Vegas, Nevada 89120
9                                                      Telephone:      (702) 433-2666
                                                      Facsimile:       (702) 433-9591
10                                                     E-Mail:         allaw@lvcoxmail.com

11                                                     Attorney for Plaintiffs
                                                      CLORISSA D. PORTER and
12                                                     WILLIAM D. SPENCER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to LR 7.1-1, the undersigned, counsel of record for Plaintiffs, certifies that there are no other known parties other than the named parties that have an interest in the outcome of this case.

Dated this 20th  day of December 2016

Respectfully submitted by

/s/ Allen Lichtenstein
Allen Lichtenstein
Allen Lichtenstein, Attorney at Law, Ltd.
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Telephone:        (702) 433-2666
Facsimile:        (702) 433-9591
E-Mail:        allaw@lvcoxmail.com

Attorney for Plaintiffs
CLORISSA D. PORTER and
WILLIAM D. SPENCER