Mark E. Merin (California Bar No. 043849)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:      (916) 443-6911
Facsimile:      (916) 447-8336
E-Mail:         mark@markmerin.com

Allen Lichtenstein (Nevada Bar No. 3992)
Allen Lichtenstein, Attorney at Law, Ltd.
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Telephone:      (702) 433-2666
Facsimile:      (702) 433-9591
E-Mail:         allaw@lvcoxmail.com

Attorneys for Plaintiffs
CLORISSA D. PORTER and
WILLIAM D. SPENCER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

| | |
|---|---|
| CLORISSA D. PORTER and WILLIAM D. SPENCER, on behalf of themselves and all those similarly situated,<br><br>                 Plaintiffs,<br><br>vs.<br><br>SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, a mental health treatment operation licensed by the State of Nevada, also known as RAWSON-NEAL PSYCHIATRIC HOSPITAL; RICHARD WHITELY, in his official capacity as Director of NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, a department of the State of Nevada; CODY PHINNEY, in his official capacity as Administrator of NEVADA DIVISION OF PUBLIC AND BEHAVIORAL HEALTH, previously organized as the NEVADA DIVISION OF HEALTH and the NEVADA DIVISION OF MENTAL HEALTH & DEVELOPMENTAL SERVICES; CHELSEA SZKLANY, in her individual capacity as previous Hospital Administrator of SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES; | Case No. 2:16-cv-02949-APG-PAL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS, DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

1    JOANNE MALAY, in her official capacity as
     Hospital Administrator of SOUTHERN NEVADA
2    ADULT MENTAL HEALTH SERVICES; LEON
     RAVIN, M.D., in individual capacity as previous
3    Associate Medical Director of RAWSON-NEAL
     PSYCHIATRIC HOSPITAL and in his official
4    capacity as Statewide Psychiatric Medical Director
     of the State of Nevada; LEO GALLOFIN, M.D., in
5    his official capacity as Associate Medical Director
     of RAWSON-NEAL PSYCHIATRIC HOSPITAL;
6    PAUL SHUBERT, in his official capacity as
     Bureau Chief of NEVADA BUREAU OF
7    HEALTH CARE QUALITY AND
     COMPLIANCE, the licensing authority; LINDA J.
8    WHITE, M.D., in her individual capacity as
     previous Statewide Psychiatric Medical Director of
9    the State of Nevada; and DOES 1 to 50,
10
11          Defendants.
12
13                    **INTRODUCTION**

14         1.      This is an action for preliminary and permanent injunctive relief and damages pursuant to

15   42 U.S.C. § 1983 based upon the ongoing violation by Defendants of the rights secured to patients in the

16   RAWSON-NEAL PSYCHIATRIC HOSPITAL by the Fourth, Eighth, and Fourteenth Amendments to

17   the United States Constitution; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

18   1213, *et seq.*; 28 U.S.C. § 1658; the Emergency Medical Treatment and Active Labor Act ("EMTALA"),

19   42 U.S.C. § 1395dd, *et seq.*; and applicable Nevada state laws, as set forth below.

20         2.      Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the class of

21   similarly situated persons they seek to represent, are former psychiatric patients at RAWSON-NEAL

22   PSYCHIATRIC HOSPITAL who, while still in need of psychiatric care, were involuntarily discharged

23   from the facility by Defendants and their agents and employees, and sent to out-of-state destinations

24   where Defendants knew said patients would be unable to obtain proper treatment, care and housing.

25   Plaintiffs, and the class they seek to represent, were medicated before their discharge and required to

26   leave the facility under the influence of powerful anti-psychotic/tranquilizing medication. While

27   Plaintiffs, and the class they seek to represent, were in a drugged state, and incompetent to give informed

28   consent, pursuant to standard procedure, institution staff physically escorted them from the facility to

                                                     2

waiting taxis bound for the Greyhound Bus Station in Las Vegas, Nevada. They were then directed and required to travel on pre-paid tickets which had been previously ordered and paid for by Defendant SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES. This patient-dumping practice is commonly referred to as "Greyhound therapy."

## JURISDICTION & VENUE

3.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that it arises under the Constitution of the United States); 28 U.S.C. § 1343(a)(3) (in that it is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution); Title II of the ADA, 42 U.S.C. 1213, *et seq.*; 28 U.S.C. 1658; EMTALA, 42 U.S.C. §1395dd, *et seq.*; and under 28 U.S.C. § 1343(a)(4) (in that it seeks to obtain equitable relief under Acts of Congress, specifically, under 42 U.S.C. § 1983, 42 U.S.C. 1213, *et seq.*; 28 U.S.C. 1658; 42 U.S.C.§ 1395dd, *et seq.*; and the Declaratory Judgment Act (28 U.S.C. §§ 2201(a) and 2202)). The Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

4.      The statute of limitations related to the claims of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the putative class members they seek to represent, was tolled/suspended by the litigation in the action *Brown v. Southern Nevada Adult Mental Health Services*, United States District Court for the District of Nevada, Case No. 2:13-cv-01039-JCM-PAL (the "*Brown* action"), where the same class claims asserted in this Complaint were asserted therein.

5.      To the extent that Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER's claims, and the claims of the putative class, were not tolled/suspended by the litigation and subsequent appeal in the *Brown* action, those parties are entitled to equitable tolling of any applicable statutes of limitation.

(a)      Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the putative class they seek to represent, reasonably relied upon their status as putative class members in the *Brown* action as a basis for not filing their own separate and independent lawsuit based on the same legal theories and facts advanced in the *Brown* action—*i.e.*, their personal experience with "Greyhound Therapy," whereby they were denied continued treatment and involuntarily discharged from the Rawson-Neal Psychiatric Hospital to another state.

3

1   After the *Brown* action's representative Plaintiff's claims were dismissed, with prejudice,

2   the District Court entered Judgment and closed the case entirely, precluding any putative

3   class member, such as Plaintiffs CLORISSA D. PORTER or WILLIAM D. SPENCER,

4   from intervening as a new class representative in order to represent the rights of the

5   unrepresented putative class. Even if any putative class member, such as Plaintiffs

6   CLORISSA D. PORTER or WILLIAM D. SPENCER, had attempted to intervene on

7   behalf of the unrepresented putative class, it would most likely have been ineffective

8   because the putative class claims were legally and factually identical to those of the

9   *Brown* action's representative Plaintiff's claims, which were dismissed with prejudice,

10  and may have been subject to collateral estoppel/issue preclusion. Accordingly, Plaintiffs

11  CLORISSA D. PORTER and WILLIAM D. SPENCER, and the putative class they seek

12  to represent, waited for resolution of the *Brown* action's representative Plaintiff's appeal,

13  reasonably believing that the resolution of that appeal would provide a controlling

14  outcome for their own claims. However, the Ninth Circuit's majority decision did not

15  address the merits of the putative class members' claims, where it was decided on a

16  procedural basis related to the claims of the *Brown* action's representative Plaintiff only.

17  The Ninth Circuit's dissent did analyze the merits of the *Brown* action's representative

18  Plaintiff's claims, and therefore the claims of the putative class, and determined that the

19  District Court had erred, as a matter of law, in dismissing those claims on the merits.

20  Immediately following the Ninth Circuit's issuance of Mandate from the appeal in the

21  *Brown* action, on the same date that Mandate issued, Plaintiffs CLORISSA D. PORTER

22  and WILLIAM D. SPENCER, on behalf of themselves and the putative class they seek to

23  represent, filed the instant action. Therefore, Plaintiffs CLORISSA D. PORTER and

24  WILLIAM D. SPENCER acted diligently in preserving their rights, and the rights of the

25  putative class they seek to represent.

26  (b)   Defendants to this action will not be prejudiced by the tolling/suspension of the statutes of

27  limitation in this case because Defendants have been aware of the claims of Plaintiffs

28  CLORISSA D. PORTER and WILLIAM D. SPENCER and the putative class they seek to

4

represent since the inception of the *Brown* action. Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER were disclosed as potential witnesses/putative class members during discovery in the *Brown* action and their records were requested from Defendants. Plaintiff WILLIAM D. SPENCER provided a written declaration, signed under penalty of perjury, of his personal "Greyhound Therapy" experience. There is uniformity and consistency in the parties, legal claims, and factual allegations asserted in the *Brown* action and instant action.

6.      Venue is proper in the United State District Court for the District of Nevada under 28 U.S.C. § 1391(b). Defendants are located in the District of Nevada and many of the acts and/or omissions complained of herein occurred or will occur in this District.

7.      Intradistrict venue is proper in the Southern Division of the United State District Court for the District of Nevada under D. Nev. L.R. IA 6-1, because this action arises from acts and/or omissions which occurred in the County of Clark, Nevada.

### PARTIES

8.      Plaintiff CLORISSA D. PORTER is a resident of Inkster, Michigan.

9.      Plaintiff WILLIAM D. SPENCER is a resident of San Francisco, California.

10.      Defendant RICHARD WHITLEY ("WHITLEY") is the Director of the NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES (hereinafter "NDHHS"), and oversees the provision of mental health services, and by statute, must monitor all state funded mental health services. NDHHS is also directly involved in decisions regarding agency structure, staffing and program development. Pursuant to N.R.S. § 433.314, NDHHS duties include, but are not limited to, establishing policies to ensure adequate development and administration of services. Defendant WHITLEY is sued in his official capacity.

11.      Defendant CODY PHINNEY ("PHINNEY") is the Administrator of the NEVADA DIVISION OF PUBLIC AND BEHAVIORAL HEALTH (hereinafter "DPBH") whose task it is to administer the provisions of the law relating to his/her division subject to administrative supervision by the director. Establishment of the DPBH was preceded by the NEVADA DIVISION OF HEALTH and the NEVADA DIVISION OF MENTAL HEALTH & DEVELOPMENTAL SERVICES. Defendant

5

1  PHINNEY is sued in his official capacity.

2         12.    Defendant CHELSEA SZKLANY ("SZKLANY") was the Administrator of care and

3  treatment provided to patients by SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, as

4  licensed by the State of Nevada to operate the psychiatric treatment facility known as RAWSON-NEAL

5  PSYCHIATRIC HOSPITAL. Defendant SZKLANY is sued in her individual capacity.

6         13.    Defendant JOANNE MALAY ("MALAY") is the Administrator of care and treatment

7  provided to patients by SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, as licensed

8  by the State of Nevada to operate the psychiatric treatment facility known as RAWSON-NEAL

9  PSYCHIATRIC HOSPITAL. Defendant SZKLANY is sued in her official capacity.

10         14.    Defendant LEON RAVIN, M.D. ("RAVIN") was Associate Medical Director and

11  responsible for care provided to patients at the RAWSON-NEAL PSYCHIATRIC HOSPITAL.

12  Defendant RAVIN is the Statewide Psychiatric Medical Director of the State of Nevada. Defendant

13  RAVIN is sued in his official capacity, as the Statewide Psychiatric Medical Director, and in his

14  individual capacity, as Associate Medical Director.

15         15.    Defendant LEO GALLOFIN, M.D. ("GALLOFIN") is Associate Medical Director and

16  responsible for care provided to patients at the RAWSON-NEAL PSYCHIATRIC HOSPITAL.

17  Defendant GALLOFIN issued in his official capacity.

18         16.    Defendant PAUL SCHUBERT ("SCHUBERT") is the Bureau Chief of the NEVADA

19  BUREAU OF HEALTH CARE QUALITY AND COMPLIANCE (hereinafter "BHCQC"), and is

20  responsible for receiving and investigating complaints that relate to health care facilities within the State

21  of Nevada. Defendant SCHUBERT is also responsible for licensing and certifying facilities, such as

22  SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES, which operates the RAWSON-

23  NEAL PSYCHIATRIC HOSPITAL. Pursuant to N.R.S. § 439.150, the State Board of Health is supreme

24  in all non-administrative matters and has general supervision over all matters relating to the preservation

25  of health and lives of Nevada citizens and over the work of State Health Officer and all district, county,

26  and city health departments. Pursuant to N.R.S. § 439.160, the Health Division has supervisory power

27  over local health officers, and has authority to investigate cases of violation of the law. Defendant

28  SCHUBERT is sued in his official capacity.

6

17.     Defendant LINDA J.WHITE, M.D. ("WHITE") was the Statewide Psychiatric Medical Director of the State of Nevada and, in that capacity, was responsible for the supervision and direction of the provision of services at the RAWSON-NEAL PSYCHIATRIC HOSPITAL, operated by SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES. Defendant WHITE is sued in her individual capacity.

18.     Defendant DOES 1 to 4, inclusive, are, and at all times material hereto were, the social workers or other members of a discharge team, and responsible for the planning, oversight and monitoring of discharging patients pursuant to federal and state regulations.

19.     Defendant DOES 5 to 15, inclusive, are, and at all material times hereto were, psychiatrists, mental health professionals, nurses, and other health workers and supervisors who were responsible for making and executing policies which resulted in the discharge and transportation to out of State of Nevada locations of patients for whom no prior follow-up care arrangements had been made, resulting in the damage complained of herein.

20.     Defendant DOES 16 to 50, inclusive, are all persons or entities who were in some way responsible for the care and treatment of Plaintiffs PORTER and SPENCER, and the class of persons they seek to represent, and/or for hiring, training, monitoring, creating and/or implementing policies and procedures relating to, and/or supervising those directly responsible for the care and treatment of Plaintiffs PORTER and SPENCER, and the class of persons they seek to represent, who failed to discharge their duties appropriately causing them to suffer damages.

21.     Defendant DOES 1 to 50's real names and identities are not now known and those persons and/or entities are therefore sued herein by their fictitious names. Plaintiffs PORTER and SPENCER will request leave of Court to substitute their real names and identities when the same are ascertained. Defendant DOES 1 to 50 are sued in their individual and official capacities.

## GENERAL ALLEGATIONS

22.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

23.     Defendant SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES (hereinafter "SNAMHS") is a mental health treatment operation licensed by the State of Nevada, which

7

is also known as RAWSON-NEAL PSYCHIATRIC HOSPITAL (hereinafter "RAWSON-NEAL").

SNAMHS admitted Plaintiff PORTER on January 7, 2013, and involuntarily discharged her by

Greyhound bus to Flint, Michigan, on January 9, 2013. SNAMHS admitted Plaintiff SPENCER on

August 26, 2012, and on September 20, 2012, involuntarily discharged him by Greyhound bus to Los

Angeles, California on September 21, 2012.

24.     Defendants SZKLANY, the previous Hospital Administrator of SNAHMS; RAVIN,

Associate Medical Director of RAWSON-NEAL; DOES 5 to 15; and agents and employees under said

Defendants' control and supervision, sent Plaintiffs, and the class they seek to represent, involuntarily, to

out-of-state destinations at which no prior arrangements had been made for their follow-up care. They

were transported out of the State of Nevada and then "dumped" into cities and states with which they had

little or no prior contacts and where no one was present to receive or to care for them. They travelled

without persons assigned to accompany them to their destinations, without any money, without

provisions for medical care, without any emergency phone numbers, without any written instructions or

assistance of any kind, and without notice to any other medical facilities, law enforcement personnel, or

other public agencies regarding their needs for continued case and the possible dangers they presented to

themselves and to the public at large by reason of their severe mental illnesses. Defendants and each of

them supplied only a minimum amount of liquid nutrient and a supply of psychiatric medication

supposedly sufficient for the days of travel, until the discharged patients' arrival at the destinations

chosen by said Defendants.

25.     After learning of the "dumping" of a putative class member, JAMES FLAVY COY

BROWN ("BROWN"), in Sacramento, California by Defendants, the Sacramento Bee newspaper began

to investigate the circumstances which led to BROWN's arrival in Sacramento and discovered that, since

the year 2008, approximately 1,500 of RAWSON-NEAL's patients in Las Vegas, Nevada, had been

transported by Greyhound Bus to almost every state in the country, all with minimum provisions to

sustain them during protracted bus rides.

26.     A random survey conducted by the NEVADA BUREAU OF HEALTH CARE QUALITY

AND COMPLIANCE (hereinafter "NBHCQC") of thirty (30) discharges of psychiatric patients from

Rawson-Neal revealed discharges in violation of policy and procedures of the Centers for Medicare and

8

1  Medicaid and the facility's own policies occur frequently. Patients, such as Plaintiffs PORTER,

2  SPENCER, and BROWN, were involuntarily placed on Greyhound buses and sent out of state without

3  prior arrangements having been made for follow-up care. These patients were not informed where they

4  should go to receive continuing care upon arrival at their destinations. Discharge orders did not specify

5  the amount of nutritional supplements to be provided to the patients for their extended bus trips; and

6  appropriate and necessary prescription medications were not provided. Furthermore, necessary

7  information was not provided on discharge documentation.

8         27.     A May 4, 2013, investigation by the Centers for Medicare and Medicaid Services

9  (hereinafter "CMS"), a component of the U.S. Department of Health and Human Service (hereinafter

10 "DHHS"), also looked at the same thirty (30) patient charts. Its report corroborates the findings of the

11 NBHCQC and, in addition, faults the hospital's governing body for: 1) failing to ensure that the medical

12 staff was accountable to the governing body for the quality of care provided to patients; 2) failing to

13 ensure there was an effective discharge planning process that applied to all patients; 3) failing to identify

14 at an early stage of hospitalization patients who were likely to suffer adverse consequences upon

15 discharge without an adequate discharge plan; 4) failing to ensure patients were provided with a

16 discharge planning evaluation and needs assessment on a consistent basis in accordance with facility

17 policies and procedures; 5) failing to ensure a discharge planning evaluation was included in patients'

18 medical records according to facility policies and procedures; and 6) failing to ensure arrangements were

19 made by hospital staff for the initial implementation of patients' discharge plans. Cumulatively, these

20 systemic practices resulted in the failure of the facility to deliver statutory mandated care to patients.

21        28.     After reviewing forty-seven (47) RAWSON-NEAL patient records, CMS reported

22 wholesale violations of its Standards for Discharge Planning (42 C.F.R. § 489.24(e)), including absence

23 of documentation regarding locations to which patients were being sent when discharged out-of-state;

24 absence of documentation that the patients were told how to access shelter or services; absence of

25 documentation regarding available services and how the patients could access those services; and lack of

26 documentation that any attempts were made to contact family or other support persons prior to discharge

27 of the psychiatric patients. These findings appeared in CMS' Summary Statement of Deficiencies, based

28 upon a survey completed on May 9, 2013.

29.     Prior patients of RAWSON-NEAL have come forward and described being bussed to various cities throughout the United States on the representation from Defendants and their agents and employees that arrangements had been made for their housing and continued care but that, upon arriving at the pre-determined destinations, these patients discovered that no arrangements for continued care, treatment, housing and/or shelter had been made and that representations to the contrary were false.

30.     Many prior patients discharged and subjected to "Greyhound therapy" — the name given to the treatment described above — immediately became homeless, and several committed suicide. This group of patients discharged from RAWSON-NEAL and bussed out of state suffered damages both physical and psychological from which they may never recover. Unless the practices described herein are enjoined, grave damages will continue to be inflicted upon this most vulnerable portion of our population.

### Clorissa D. Porter

31.     Plaintiff CLORISSA D. PORTER is a 33 year old indigent woman diagnosed with Bi-Polar disorder and Schizophrenia who was a resident of Las Vegas, Nevada.

32.     On January 7, 2013, Plaintiff PORTER was admitted to RAWSON-NEAL, psychotic, depressed, and suicidal.

33.     Plaintiff PORTER was prescribed psychoactive medication, including Abilify and another psychotropic medication which affects thinking and judgment.

34.     On January 9, 2013, psychiatrist Dr. RAO PUVVADA ordered Plaintiff PORTER discharged, physically escorted from the facility, and placed in a taxi which had been ordered by Defendants. Plaintiff PORTER was then transported to the Greyhound Bus Station where a pre-paid ticket had been purchased by the Defendants to take Plaintiff PORTER to Flint, Michigan, a city at least two hours from Cora, Michigan, at which Defendants had supposedly made arrangements for her to get continued treatment. Other Greyhound passengers generously shared food with Plaintiff PORTER because she had nothing to eat during the two-day bus ride from Nevada to Michigan. She was only given four days' worth of powerful anti-psychotic medications, but no food.

35.     There was no follow-up plan and no prior contact had been made with any institutions in Michigan from which Plaintiff PORTER could obtain medical and psychiatric care, and no arrangements

10

were made with any facility at which Plaintiff PORTER could obtain shelter or assistance of any kind.

Knowing no one in Flint, with no money and no way to travel to Cora, she contacted RAWSON-NEAL

where staff told her to contact the facility in Caro. Plaintiff PORTER contacted her cousin in Las Vegas,

Nevada, who wired her funds for food. Plaintiff PORTER experienced a mental breakdown and was

admitted to a hospital in Michigan which attempted, unsuccessfully, to obtain Plaintiff PORTER'S

records from RAWSON-NEAL.

36.     Defendants knew Plaintiff PORTER was penniless and homeless and Defendants and each

of them, as well as their agents and employees operating under their control and direction, knew or acted

in reckless disregard of the fact that she would be unable to care for herself during the journey or upon

her arrival. While Defendants, and each of them and their agents and employees, had purportedly

developed a written treatment plan which included making arrangements for her to be taken into a

program in Caro, Michigan, this treatment plan was intentionally disregarded and violated by her

involuntary discharge without any arrangements having been made for Plaintiff PORTER to get to Caro

from Flint Michigan to which she was sent, nor to enter into any program, contrary to the plan.

37.     Defendants knew that Plaintiff PORTER did not wish to go to Michigan and was suffering

from bi-polar disorder and schizophrenia. No plan for a continuation of her psychiatric or medical

treatment was formulated before Plaintiff PORTER was dispatched to the Greyhound bus station in Las

Vegas, Nevada, and no contact was made by Defendants with any provider of medical or psychiatric or

any other services in Michigan for follow-up care. Plaintiff PORTER remained in Michigan with no way

to return to Nevada to be with her family.

**William D. Spencer**

38.     Plaintiff WILLIAM D. SPENCER is a 51 year old man who was employed in Las Vegas,

Nevada and diagnosed with severe depression.

39.      On August 26, 2012, Plaintiff SPENCER was admitted to RAWSON-NEAL. Plaintiff

SPENCER was medicated and, after a couple of weeks at the facility, spoke with Dr. JACOB

MANJOORAN who noted that he had once lived in Glendale, California and told Plaintiff SPENCER

that he had a one-way Greyhound bus ticket for him to Los Angeles, California. Dr. MANJOORAN told

Plaintiff SPENCER that, after Greyhound dropped him off in Los Angeles, he should "call 9-1-1" for

11

1    help. Plaintiff SPENCER told Dr. MANJOORAN that the arrangement was not acceptable to him, that

2    he had no intention of returning to California, and that he wished to stay in Las Vegas, Nevada where he

3    had been living for the past two years and where he had the best prospect to obtain employment and

4    housing. He refused Defendant MANJOORAN' proposed discharge plans.

5        40.    On September 20, 2012, Dr. MANJOORAN told Plaintiff SPENCER that he was being

6    discharged that night. Plaintiff SPENCER again expressed his desire to remain in Las Vegas but, in

7    response, he was told that he was going to be discharged to a "residential aftercare facility" in Pasadena,

8    California where he would receive further treatment and have a support structure to assist him to return to

9    work. Plaintiff SPENCER was told that housing arrangements had already been made for him in the

10   aftercare facility in Pasadena. Plaintiff SPENCER accepted the discharge plan with the aforementioned

11   assurances.

12       41.    That evening, shortly before midnight, Plaintiff SPENCER was given a receipt for the pre-

13   purchased Greyhound bus ticket and three days' worth of depression medication he had been prescribed

14   at RAWSON-NEAL. Plaintiff SPENCER was then escorted by hospital staff to a taxi waiting outside of

15   RAWSON-NEAL and taken to the Greyhound Bus Station.

16       42.    After receiving the itinerary at the bus station, Plaintiff SPENCER realized he was bound

17   for Los Angeles, not Pasadena, and began to experience a panic attack. Plaintiff SPENCER attempted to

18   change his destination but was told that there was no Pasadena Greyhound Bus Station. Plaintiff

19   SPENCER called RAWSON-NEAL and was told that staff at the aftercare facility would drive to Los

20   Angeles, pick him up and transport him to Pasadena; he was told to call the aftercare facility once he

21   reached Los Angeles.

22       43.    Early in the morning of September 21, 2012, Plaintiff SPENCER arrived in Riverside,

23   California, without money or food, and having had nothing to eat during the eight hour bus ride.  He

24   immediately called the aftercare facility in Pasadena, as he was instructed to do by RAWSON-NEAL,

25   and was informed that they had no information about him or his arrival, that they had not been contacted

26   by RAWSON-NEAL, that they never performed "pickups" of residents, and furthermore, they had no

27   space for him at the facility. Plaintiff SPENCER experienced a severe panic attack and contacted the

28   local police who contacted the aftercare facility and received the same information. He became homeless

1   in Riverside for approximately a week until he finally connected with relatives in Hesperia, California

2   who assisted him to recover from the experiences of being misled and "dumped" by RAWSON-NEAL.

3         44.   As Defendants, and each of them, knew, Plaintiff SPENCER was discharged without

4   money, food, or identification, knew no one in Riverside, and had no way to get to Pasadena where, it

5   was falsely represented, a residential care facility was awaiting his arrival. Defendants also knew that

6   Plaintiff SPENCER was severely depressed, wished to remain in Las Vegas where he had lived and

7   worked the prior two years, and did not wish to go to Pasadena or to any other location in California. No

8   plan for a continuation of his psychiatric or medical treatment was formulated before Plaintiff SPENCER

9   was dispatched to the Greyhound bus station in Las Vegas, Nevada, and no contact was made by

10  Defendants with any provider of medical, psychiatric, or any other services in California for follow-up

11  care.

12                       **EQUITABLE ALLEGATIONS**

13        45.   The failures of Defendants, and each of them, all acting under color of state law, to deliver

14  the statutorily-mandated care to patients in their custody and control resulted in the systematic disregard

15  of their serious psychological and medical conditions and resulted in adverse consequences, which

16  predictably flow from such failures and caused damages to patients who were victims of such disregard.

17        46.   Unless preliminarily and permanently enjoined from violating statutory and federal

18  constitutional provisions, and policies and procedures and standards in place to safeguard the condition

19  of patients under their care and control, Defendants' disregard of those statutory and federal

20  constitutional provisions and policies, procedures and standards will continue and members of the class

21  will likely be damaged, as Plaintiffs PORTER and SPENCER were damaged when bused out-of-state

22  after being discharged from RAWSON-NEAL.

23                        **CLASS ALLEGATIONS**

24        47.   Plaintiffs PORTER and SPENCER seek to have a class certified under Rule 23(b)(2)

25  and/or 23(b)(3) of the Federal Rules of Civil Procedure. The Class is defined as follows:

26      A class of all persons in need of mental health services who were admitted and

27      subsequently discharged from SOUTHERN NEVADA ADULT MENTAL HEALTH
        SERVICES' RAWSON-NEAL PSYCHIATRIC HOSPITAL facility who meet the

28      following criteria:

a.    upon discharge escorted to a pre-paid taxi and transported to the local Greyhound bus terminal and provided a voucher for a one-way ticket to an out-of-state destination; and

b.    without documentation in hospital records of arrangements for the continuation of their treatment; for follow-up care; and for them to be met, upon arrival, and/or directed to facilities at which shelter and/or continuation of care could be obtained.

48.    The class is so numerous that joinder of all members is impractical. Based on an examination of records, Plaintiffs are informed and believe that between 2008 and January 2013, more than1500 patients were discharged from RAWSON-NEAL, placed on Greyhound buses, and shipped out of state on pre-paid bus tickets without required follow-up arrangements for them having been made and documented in hospital records. Plaintiffs are informed and believe that more than several hundred of those patients were inappropriately and illegally discharged in violation of the U.S. Constitution and statutes, Nevada State laws and regulations, and the institution's own stated policies and procedures. There are questions of law and fact common to all members of the class, since all share the same factual and legal nexus.

49.    The claims of the representative Plaintiffs PORTER and SPENCER are typical of the claims of the class members. The representative parties will fairly and adequately represent the interests of the class.

50.    Defendants' discharge customs, practices, and policies, sometimes referred to as "Greyhound therapy," have affected all members of the class in the same way, thereby making injunctive and declaratory relief appropriate to the class as a whole.

51.    Common questions of fact to be determined with respect to the class include:

a.    Whether Defendants operate a facility which provides emergency treatment to persons who need mental health services;

b.    Whether Defendants discharge patients and arrange transportation for them to Greyhound buses for out-of-state transport on pre-paid, one-way tickets;

c.    Whether Defendants customarily administer prescription psychotropic medications to the patients being discharged for out-of-state transportation;

d.    Whether Defendants customarily represented to the patients being discharged for

14

out-of-state destinations that arrangements had been made for them to receive, upon arrival at those destinations, shelter, care, and treatment for their continuing medical and psychological needs;

  e. Whether, contrary to representations, no arrangements are customarily made for the discharged patients to be met and /or to receive the care Defendants represented the patients would receive;

  f. Whether patients who are residents of counties in the State of Nevada when admitted to RAWSON-NEAL, operated by Defendant SNAMHS, are discharged, not to the counties in the State of Nevada where they previously resided, but rather transported to out-of-state locations;

  g. Whether representations were customarily made to induce patients to sign "consent to discharge" forms;

  h. Whether defendants and their agents knew or should have known that the persons signing "consent to discharge" forms, prior to Greyhound bus out-of-state transportation  were under the influence of  psychotropic medications or otherwise mentally impaired such that they were incapable of giving knowing, informed consent, and

  i. Whether psychiatric patients of Defendants who were bussed to out-of-state locations without prior arrangements having been made to provide them with appropriate shelter, care and continuing medical and psychiatric treatment were harmed.

52. The common questions of law to be determined with respect to the class are:

  i. Whether Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's discharge practices relating to out-of-state transport of psychiatric patients violate the rights of class members under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Nevada law, and the institution's policies and procedures;

  ii. Whether Defendants WHITLEY, SZKLANY, RAVIN, WHITE, and DOES 1 to 50, by virtue of their positions of authority, were responsible for the acts and

15

violations of the institutions and subordinates under their control and direction; and

    iii.      Whether Defendants SZKLANY, RAVIN, and DOES 1 to 50, in their individual capacities, violated their fiduciary duties and policies, procedures and regulations which were promulgated and designed to protect the vulnerable patients in their care.

53.    These questions of law and fact are common to all members of the class and predominate over any question affecting individual class members.

54.    The class representative knows of no conflict of interest among class members. Plaintiffs are represented by Mark E. Merin and Allen Lichtenstein, who are experienced civil rights attorneys who can vigorously prosecute this action.

## MUNICIPAL & SUPERVISORY ALLEGATIONS

55.    Defendant SNAMHS, and its hospitals it is licensed to operate, including RAWSON-NEAL, are required by 42 C.F.R. § 482.43 to have in effect a discharge planning process that applies to all patients. Contrary to this requirement, Defendants WHITLEY, SZKLANY, RAVIN, WHITE, and DOES 1 to 50 failed to ensure that a comprehensive discharge plan was implemented for patients discharged from the facility and failed to identify patients who were likely to suffer adverse health consequences upon discharge without an adequate discharge plan. Furthermore, the above-named Defendants denied individuals qualified for protection under Title II of the ADA and EMTALA the benefit of a safe involuntary commitment and discharge, in violation of their obligations as public entities.

56.    Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50 failed to provide an appropriate safe discharge plan for patients according to physicians' orders and failed to ensure a discharge planning evaluation was completed on patients that included the likelihood that patients would need post-hospital services and identify where such services would be received. As a result, patients were discharged with deliberate indifference to, and reckless disregard of, their serious medical and psychiatric needs for which no discharge plan was developed or followed. To the contrary, patients, including Plaintiffs PORTER and SPENCER, and members of the class which they seek to represent, were

16

administered powerful psychotropic medications and, while unable to intelligently and knowingly consent, were involuntarily placed into taxis, and conveyed to Greyhound buses into which they were loaded for out-of-state destinations at which no prior arrangements had been made for provision of necessary follow-up care, in violation of the policies set out in 42 C.F.R. 482, Title II of the ADA, EMTALA, and in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

57.   Defendants SZKLANY, RAVIN, and WHITE, as supervisors of their positions with the State of Nevada and Defendant SNAMHS and/or RAWSON-NEAL, were aware of or deliberately indifferent to the unlawful and inadequate discharge policies and practices described above. Defendants SZKLANY and RAVIN acquiesced and/or were culpably indifferent to continued application of such unlawful discharge policies and practices.

58.   The above-described actions by Defendants, and each of them, caused and, unless preliminarily and permanently enjoined, will continue to cause great psychological, physical and emotional suffering, degradation, pain, and injury, financial loss, and loss of liberty to Plaintiffs PORTER and SPENCER and the class they seek to represent.

59.   On September 30, 2013, the City Attorney of San Francisco filed a class action lawsuit on behalf of the City and County of San Francisco against the State of Nevada seeking to bar Nevada from conducting the patient-dumping discharge practices described herein, and seeking reimbursement for San Francisco's costs to provide care to the patients who had been dumped by Nevada into San Francisco. *See* <http://www.sfcityattorney.org/2013/09/12/nevada-patient-dumping-class-action/>. The case was subsequently settled by Nevada for a payment of $400,000.00 and implementation of policies that were intended to limit Nevada's ability to dump patients in the future.

## FIRST CLAIM

### Unreasonable Seizure

### (Fourth & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)

60.   Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

61.   The First Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants

17

1    RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official

2    capacity (for damages); CHELSEA SZKLANY, in her individual capacity (for damages); JOANNE

3    MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official and

4    individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official capacity

5    (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA J.

6    WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and

7    individual capacities (for damages and equitable relief).

8         62.    Defendants, and each of them, are state actors subject to strictures of the Fourth

9    Amendment. Defendants, through the use of coercion, physical force or show of authority, restrained or

10   restricted Plaintiffs PORTER and SPENCER and the class they seeks to represents' freedom of

11   movement. Defendants administered powerful psychotropic medications to Plaintiffs PORTER and

12   SPENCER, and the members of the class they represent, misrepresented services allegedly arranged for

13   them, then involuntarily discharged them, placed them into taxis for transport to Greyhound buses, and

14   required them to board these buses for transport out of State while under the influence of powerful

15   psychiatric medications for severe mental illness that rendered them incapable of informed consent.

16   These compelled transports, under the circumstances, were coercive in nature and implemented without

17   voluntary consent, and constituted unreasonable seizures and violated Plaintiffs' right to due process of

18   law under the Fourth and Fourteenth Amendments of the U.S. Constitution.

19        63.    Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by

20   evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to

21   represent, Fourth and Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or

22   oppressively done.

23        64.    As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they

24   seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

25        WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

26   and for all members of the class which they seek to represent, pray for relief as hereunder appears.

27

28

## SECOND CLAIM

### Cruel and Unusual Punishment

### (Eighth & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)

65.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

66.     The Second Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages); JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

67.     Defendants, and each of them, have and for all times material hereto, had a duty to provide for the physical and psychiatric needs of their patients. Instead of providing such care, however, Defendants, and each of them, demonstrated deliberate indifference to and reckless disregard of those needs by discharging Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, by taxi and Greyhound bus to locations outside of the State of Nevada without documenting in the hospital record and providing for the continuation of necessary medical and psychiatric services, thus causing Plaintiffs PORTER and SPENCER, and the class they seek to represent, to suffer physical and psychological harm. Defendants' actions or inactions were sufficiently analogous to criminal punishment, because they effectively banished Plaintiffs PORTER and SPENCER, and the class they seek to represent, to out-of-state locations outside of the State of Nevada. The aforesaid deliberate indifference and banishment to their serious physical and psychiatric condition constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

68.     Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to

1   represent, Eighth and Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or

2   oppressively done.

3         69.   As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they

4   seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

5         WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

6   and for all members of the class which they seek to represent, pray for relief as hereunder appears.

7   **THIRD CLAIM**

8   **Procedural Due Process**

9   **(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

10         70.   Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

11   the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

12         71.   The Third Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

13   WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants

14   RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official

15   capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages);

16   JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official

17   and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official

18   capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA

19   J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and

20   individual capacities (for damages and equitable relief).

21         72.   Plaintiffs PORTER and SPENCER, and the class they seek to represent, maintained a

22   procedurally-protected property interests in various statutes and regulations. *See*, *e.g.*, N.R.S. §

23   433A.400; N.R.S. § 433.314; 42 C.F.R. § 482.43; 42 C.F.R. § 489.24(e); and 45 C.F.R. § 205.10.

24   Additionally, they maintained a liberty interest against being involuntarily discharged without voluntary

25   consent or any form of notice, hearing, or means of challenging the involuntary discharge.

26         73.   Plaintiffs PORTER and SPENCER, and the class they seek to represent, were not given

27   notice, a hearing or any appropriate due process as a means to challenge or reverse Defendants'

28   involuntary discharge and compelled out-of-state transport of them, in violation of the procedurally-

protected interest outlined above which are protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Any government interest in involuntarily discharge is outweighed by the risk of erroneous deprivation and private interests at stake.

74.     Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

75.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## FOURTH CLAIM

### State-Created Danger (Substantive Due Process)

### (Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)

76.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

77.     The Fourth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages); JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

78.     Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were subject to Defendants' involuntary discharge and compelled out-of-state transport, which affirmatively placed them in a position of danger which they otherwise would not have faced but for the

21

Defendants' actions, in violation of their Fourteenth Amendment rights to the U.S. Constitution. Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were placed in a position of danger that they were not in prior to entering RAWSON-NEAL for treatment, upon involuntary out-of-state discharge.

79.     Defendants' actions or inactions constitute conscience-shocking behavior which fails to comport with traditional ideas of fair play and decency, resulting in interference of the rights of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, Fourteenth Amendment rights secured by the U.S. Constitution.

80.     Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

81.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

## FIFTH CLAIM

### Special Relationship (Substantive Due Process)

### (Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)

82.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

83.     The Fifth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages); JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA

22

J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and individual capacities (for damages and equitable relief).

84.     Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were subject to Defendants' involuntary discharge and compelled out-of-state transport, after Defendants had obtained custody and formed a special relationship with them through which Defendants assumed some responsibility for their safety and well-being, in violation of their Fourteenth Amendment rights to the U.S. Constitution.

85.     Defendants' actions or inactions constitute conscience-shocking behavior which fails to comport with traditional ideas of fair play and decency, resulting in interference of the rights of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, Fourteenth Amendment rights secured by the U.S. Constitution.

86.     Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to represent, Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or oppressively done.

87.     As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

<u>**SIXTH CLAIM**</u>

**Wealth Discrimination (Equal Protection)**

**(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

88.     Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

89.     The Sixth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages);

23

1  JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official

2  and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official

3  capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA

4  J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and

5  individual capacities (for damages and equitable relief).

6        90.    Defendants, upon information and belief, treated indigent patients such as Plaintiffs

7  PORTER and SPENCER, and the members of the class they seek to represent, differently, shipping out-

8  of-state via taxi and Greyhound bus those who could not pay for services in RAWSON-NEAL, while

9  retaining or arranging appropriate discharge for patients who were not indigent. Thus Defendants' above-

10 described policies, practices and procedures were intended and designed to and did single out indigent

11 patients and have the purpose and effect of depriving indigent psychiatric patients of their right to equal

12 psychiatric and medical care in SNAHMS' RAWSON-NEAL. These policies and actions are based on

13 Defendants' animus towards this disfavored group and/or their desire to preserve the fiscal integrity of

14 their programs and lack a rational relationship to any legitimate state interest. In adopting and

15 implementing these policies and practices with intent to harm and disadvantage indigent patients in their

16 care and custody, Defendants have violated the Equal Protection Clause.

17       91.    Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50's conduct was motivated by

18 evil motive or intent, involved reckless or callous indifference to Plaintiffs', and the class they seek to

19 represent, Fourteenth Amendment rights secured by the U.S. Constitution, or was wantonly or

20 oppressively done.

21       92.    As a direct and proximate result of the Defendants' actions, Plaintiffs, and the class they

22 seek to represent, suffered injuries entitling them to receive compensatory and punitive damages.

23       WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

24 and for all members of the class which they seek to represent, pray for relief as hereunder appears.

25                              **SEVENTH CLAIM**

26                          **Disability Discrimination**

27    **(Title II of the Americans with Disabilities Act; 42 U.S.C. § 1213, *et seq.* & 28 U.S.C. § 1658)**

28       93.    Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

24

the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

94.    The Seventh Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES (for damages and equitable relief); RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official capacity (for equitable relief); JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official capacity (for equitable relief); LEO GALLOFIN, M.D., in his official capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); and DOES 1 to 50, in their official capacities (for equitable relief).

95.    Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, are qualified disabled persons under Title II of the ADA, and were suffering from a mental disability at the time of the incident giving rise to this action.

96.    Defendant SNAMHS is a public entity under Title II of the ADA. Defendant SNAMHS and its administrators, including Defendants SZKLANY, RAVIN, WHITE, and DOES 1 to 50, violated Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable modifications to their policies, practices and procedures to ensure their needs, as individuals with a disability, would be met.

97.    The exercise of the policy to place an involuntary committed patient in an unstable, untreated, severe psychiatric condition in a taxi to be placed in a Greyhound on a one-way ticket to another city with which he had no personal ties and without arrangements having been made for continuation of care, constituted a violation of the right to receive medical care while in custody of the state under Title II of the ADA. Pursuant to 42 C.F.R. § 482.12, 42 C.F.R. § 482.11, 42 C.F.R. § 482.13, 42 C.F.R. § 482.43, and N.A.C. 449.332, Defendants were required to exercise the same level of care to all patients during discharge. Failure to protect Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, violated their constitutional right to reasonable medical care without conscious indifference by Defendants.

98.    As a direct and proximate result of Defendants' conscious indifference to and reckless

25

1  disregard of the needs of Plaintiffs PORTER and SPENCER, and the members of the class they seek to

2  represent, and Defendants' refusal to provide safe medical care to an involuntarily committed patient

3  during discharge while in their care and custody and their failure to protect him and the class he seeks to

4  represent, Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent,

5  suffered injuries entitling them to receive compensatory and punitive damages.

6      WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves

7  and for all members of the class which they seek to represent, pray for relief as hereunder appears.

8                                   **EIGHTH CLAIM**

9                                   **Patient-Dumping**

10  **(Emergency Medical Treatment and Active Labor Act; 42 U.S.C. § 1395dd, et seq.)**

11      99.    Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER reallege and incorporate

12  the allegations of the preceding paragraphs 1 to 59 as if fully set forth in this Claim.

13      100.    The Eighth Claim is asserted on behalf of Plaintiffs CLORISSA D. PORTER and

14  WILLIAM D. SPENCER, and the members of the class they seek to represent, against Defendants

15  SOUTHERN NEVADA ADULT MENTAL HEALTH SERVICES (for damages and equitable relief);

16  RICHARD WHITLEY, in his official capacity (for equitable relief); CODY PHINNEY, in his official

17  capacity (for equitable relief); CHELSEA SZKLANY, in her individual capacity (for damages);

18  JOANNE MALAY, in her official capacity (for equitable relief); LEON RAVIN, M.D., in his official

19  and individual capacities (for damages and equitable relief); LEO GALLOFIN, M.D., in his official

20  capacity (for equitable relief); PAUL SCHUBERT, in his official capacity (for equitable relief); LINDA

21  J. WHITE, M.D., in her individual capacity (for damages); and DOES 1 to 50, in their official and

22  individual capacities (for damages and equitable relief).

23      101.    EMTALA imposes special responsibilities on a hospital with an emergency department.

24  Pursuant to EMTALA's medical screening requirement, if an individual seeks emergency care from a

25  hospital with an emergency department and if that hospital participates in the Medicare program, then

26  "the hospital must provide for an appropriate medical screening examination within the capability of the

27  hospital's emergency department . . . to determine whether or not an emergency medical condition . . .

28  exists." 42 U.S.C. § 1395dd(a). Once an individual with an emergency medical condition has been

26

**FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Porter v. Southern Nevada Adult Mental Health Services*; United States District Court, District of Nevada, Case No. 2:16-cv-02949-APG-PAL

admitted, the hospital must stabilize the patient and, if transferring the patient, comply with 42 C.F.R. § 489.24(e).

102.    At all material times alleged herein, RAWSON-NEAL had a psychiatric observation unit (POU) which meets the EMTALA definition of a dedicated emergency department.

103.    At all material times alleged herein, RAWSON-NEAL was a Medicare participant.

104.    Defendant SNAMHS, including medical staff at RAWSON-NEAL, failed to provide for an appropriate medical screening examination of Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, within the capability of the hospital's emergency department in order to determine whether or not they suffered from an emergency medical condition upon his arrival to the RAWSON-NEAL.

105.    Pursuant to EMTALA's stabilization before transfer requirement, a hospital is liable if it detected an emergency medical condition for any individual who came to the hospital, but failed "to stabilize" that condition before transferring the individual. 42 U.S.C. § 1395dd(b)-(c). The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A). Transfer includes both discharge and movement to another facility. 42 U.S.C. § 1395dd(e)(4).

106.    Defendant SNAHMS' medical staff at RAWSON-NEAL detected that Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent, were suffering from an emergency medical condition, but failed to stabilize them prior to discharging him from the hospital. Defendant SNAHMS' RAWSON-NEAL staff failed to determine, within reasonable medical probability, that no material deterioration of Plaintiffs PORTER and SPENCER's, and the members of the class they seek to represent, emergency medical condition was likely to result from or occur during their transfer from RAWSON-NEAL.

107.    Defendants "transferred"/involuntarily discharged Plaintiffs PORTER and SPENCER, and the members of the class they seek to represent,, without determining that there was another facility that had agreed to accept them; without determining that space and qualified personnel in a facility were available to provide necessary treatment to them; without providing a receiving facility with all of their

27

medical records; without providing them with information about how and where to get shelter and access to services they required; and without documenting in the medical record that information which was necessary for them to have to obtain necessary continuing care and treatment.

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, pray for relief as hereunder appears.

### PRAYER

WHEREFORE, Plaintiffs CLORISSA D. PORTER and WILLIAM D. SPENCER, for themselves and for all members of the class which they seek to represent, seek relief from the Court as follows:

1. For an order certifying the proposed class under Federal Rule of Civil Procedure 23;

2. For a temporary restraining order and/or preliminary injunction and permanent injunction enjoining and restraining Defendants from continuing or repeating the unlawful policies, practices and conduct complained of herein;

3. For declaratory judgment that Defendants' policies, practices and conduct as alleged herein were/are in violation of Plaintiffs' rights under the United States Constitution, and Nevada law;

4. For damages in an amount according to proof;

5. Punitive damages;

6. For attorneys' fees as provided by law;

7. For costs of suit; and

8. For such other and further relief as the Court may deem just and proper.

Dated: January 31, 2017                    Respectfully Submitted,

By: _____
    Mark E. Merin
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorney for Plaintiffs
    CLORISSA D. PORTER and
    WILLIAM D. SPENCER

28

1

## JURY TRIAL DEMAND

2      A JURY TRIAL IS DEMANDED on behalf of Plaintiffs CLORISSA D. PORTER and

3   WILLIAM D. SPENCER.

4   Dated: January 31, 2017                    Respectfully Submitted,

5

6

7                                              By: _____

8                                                  Mark E. Merin
                                                   LAW OFFICE OF MARK E. MERIN
                                                   1010 F Street, Suite 300
9                                                  Sacramento, California 95814
                                                   Telephone: (916) 443-6911
10                                                 Facsimile: (916) 447-8336

11
                                                   Attorney for Plaintiffs
12                                                 CLORISSA D. PORTER and
                                                   WILLIAM D. SPENCER
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28